**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PRESTON D. PERKINS, JR.,

Plaintiff,

vs.

NAVY FEDERAL CREDIT UNION and EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendants.

Case No.: 2:25-cv-02146-GMN-DJA

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court are two Motions for Partial Summary Judgment filed by Plaintiff Preston Perkins, (ECF Nos. 42, 65), a Motion for Summary Judgment filed by Defendant Experian Information Solutions, Inc. ("Experian"), (ECF No. 95), and a Motion for Summary Judgment filed by Defendant Navy Federal Credit Union ("Navy Federal), (ECF No. 99). The parties filed Responses and Replies, (ECF Nos. 46, 49, 57, 59, 68, 70, 77, 78, 102, 104, 108, 110). Further pending before the Court are a Motion for Temporary Restraining Order, (ECF No. 20), a Motion for Preliminary Injunction, (ECF No. 21), a Motion to Expedite, (ECF No. 85), and a Motion for Leave to File Document, (ECF No. 113), all filed by Plaintiff, as well as Navy Federal's Motion to Dismiss, (ECF No. 25).

For the reasons discussed below, the Court GRANTS Navy Federal's Motion for Summary Judgment, GRANTS Experian's Motion for Summary Judgment, DENIES Plaintiff's Motions for Partial Summary Judgment, and DENIES the remaining motions as moot.

///

///

///

# I. BACKGROUND

## A. Navy Federal Loan and GAP Program

This case arises from a loan issued to Plaintiff Preston Perkins by Defendant Navy Federal Credit Union. On September 23, 2021, Plaintiff executed a Promissory Note, Security Agreement, and Truth-in-Lending Disclosure for $80,000 in favor of Navy Federal in connection with the loan, which was issued by Navy Federal for a Range Rover purchased by Plaintiff. (ePromissory Note at 2, Ex. 1 to Navy Fed. Mot. Summ. J., ECF No. 99-1). Pursuant to the Note, Plaintiff agreed to make 71 payments of $1,272.83 each beginning on November 14, 2021. (*Id.*).

By October 5, 2021, Plaintiff was enrolled in Navy Federal's Guaranteed Asset Protection ("GAP") program with a one-time enrollment fee of $399.00. (GAP Enrollment Letter at 2, Ex. 3 to Navy Fed. Mot. Summ. J., ECF No. 99-3). GAP "is voluntary and not required to obtain credit." (GAP Agreement at 2, Ex. 4 to Navy Fed. Mot. Summ. J., ECF No. 99-4). Although it "is not insurance coverage," it is a means for an enrollee to be paid in the event of a "Total Loss," where the cost to repair or replace the vehicle would exceed its actual cash value, or an "Unrecovered Theft." (*Id.*). The GAP Agreement prescribes the procedures for an enrollee to obtain any benefits: he or she must notify Navy Federal within 60 days of receiving a final settlement from the insurance carrier, with specified documentation. (*Id.*). The GAP Agreement is automatically terminated if the enrollee defaults on or charges off the underlying promissory note. (*Id.*). Both the Promissory Note and the GAP Agreement contain choice-of-law provisions selecting Virginia as the operating body of law, when not governed by federal law. (ePromissory Note at 3, Ex. 1 to Navy Fed. Mot. Summ. J.); (GAP Agreement at 2, Ex. 4 to Navy Fed. Mot. Summ. J.).

On May 4, 2023, Plaintiff called Navy Federal to initiate a GAP claim. (GAP Claim File at 2, Ex. 6 to Navy Fed. Mot. Summ. J., ECF No. 99-6). However, he stated that his vehicle

was damaged but not declared a total loss. (Buckman Decl., Ex. 10 to Navy Fed. Mot. Summ. J., ECF No. 99-10). Navy Federal explained to Plaintiff that GAP protection is available only for total losses and advised him of the documents he would need to submit to pursue the claim. (*Id.*). Later that day, Navy Federal sent Plaintiff a letter requesting the same documents. (GAP Claim File at 4, Ex. 6 to Navy Fed. Mot. Summ. J.). On June 20, 2023, Navy Federal sent Plaintiff a second letter seeking the requisite documents. (*Id.* at 5). Because Plaintiff never provided the documents necessary to substantiate his GAP claim, Navy Federal administratively closed his claim on July 3, 2023. (*Id.* at 6). Appraisals of Plaintiff's vehicle in 2024 and 2025 ranged from approximately $17,000 to $19,000. (Oct. 17, 2024, Carmax Appraisal, Ex. K. to Pl's. First Mot. Part. Summ. J., ECF No 42-2); (Dec. 17, 2025, Allstate Mkt. Valuation Rep., Ex. N to Pl's. First Mot. Part. Summ. J., ECF No. 42-2).

Ultimately, Plaintiff failed to make all required payments on the Promissory Note. On February 24, 2024, Navy Federal notified Plaintiff that it had not received the payment due February 14, 2024. (Delinq. Notice at 2, Ex. 5 to Navy Fed. Mot. Summ. J., ECF No. 99-5). The notice advised that "[l]ate payments, missed payments, or other defaults on your account may be reflected in your credit report." *Id.* On September 16, 2025, Navy Federal charged off the loan and sold the Note to LVNV Funding, LLC with a remaining balance of $52,959.76. (Notice of Sale at 2, Ex. 8 to Navy Fed. Mot. Summ. J, ECF No. 99-8); (LVNV Notice at 2, 4, Ex. 9 to Navy Fed. Mot. Summ. J., ECF No. 99-9). Navy Federal then ceased collection efforts and communications with Plaintiff related to the original Promissory Note.

**B. Errors in the Promissory Note**

The Promissory Note initially contained an error in the Vehicle Identification Number ("VIN"). On June 5, 2022, Plaintiff notified Navy Federal of a "clerical error" in the VIN. (Pl's. June 5, 2022, Correspondence at 2, Ex. 9 to Navy Fed. Mot. Summ. J., ECF No. 99-9). Navy Federal twice sent Plaintiff corrected loan documents: on May 4, 2023, when he called to

initiate a GAP claim, (Buckman Decl. at 4, Ex. 10 to Navy Fed. Mot. Summ. J.), and on February 28, 2024, after he stopped making payments on the loan. (Navy Fed.'s Letter of Feb. 28, 2024, at 2, Ex. 2 to Navy Fed. Mot. Summ. J., ECF No. 99-2).

The original Promissory Note also noted that Plaintiff had "[d]eclined" GAP enrollment on that date and accordingly charged him $0.00. (ePromissory Note at 2, Ex. 1 to Navy Fed. Mot. Summ. J.). Plaintiff informed Navy Federal that this was an error in his June 5, 2022, correspondence. (Pl's. June 5, 2022, Correspondence at 2, Ex. 9 to Navy Fed. Mot. Summ. J.). Nevertheless, Plaintiff was enrolled in GAP by October 5, 2021, at the latest, twelve days after he signed the Promissory Note. (GAP Enrollment Letter at 2, Ex. 3 to Navy Fed. Mot. Summ. J.).

### C. Experian's Reporting and Plaintiff's Disputes

Navy Federal first reported Plaintiff's default and later his charge-off to Experian. (Buckman Decl. at 4, Ex. 10 to Navy Fed. Mot. Summ. J.). By October 7, 2024, Experian recorded Plaintiff's FICO Score as 549, which it described as "poor." (Experian Credit Rep., Ex. I to Pl's. First Mot. Part. Summ. J., ECF No. 42-2).

Between June 2024 and February 2025, Plaintiff disputed the Navy Federal tradeline with Experian on at least 11 occasions. (Pl's Resps. to Interrogs. 20:12–28, Ex. 3 to Experian Mot. Summ. J., ECF No. 95-3). He claimed that the Navy Federal tradeline was "invalid and fraudulent" because of the errors in the original Promissory Note, rendering his debt "null and void." (Pl's. Jan. 13, 2025, Correspondence at 2, Ex. 4 to Experian Mot. Summ. J., ECF No. 95-4).

For each dispute, Experian sent an Automated Consumer Dispute Verification to Navy Federal, Navy Federal verified the account information as accurate, and Experian communicated the reinvestigation results to Plaintiff. (Fievez Decl. at ¶ 15, Ex. 5 to Experian Mot. Summ. J., ECF No. 95-5). At no point did Plaintiff dispute the veracity of the information

in Navy Federal's tradeline— *e.g.*, the balance amount or payment history—merely the legality of the underlying Promissory Note. (*Id.* at ¶ 14); (Pl's. Resps. to Interrogs. 20:7–22:2, Ex. 3 to Experian Mot. Summ. J.). Based on that information, Experian did not accept Plaintiff's proposed change of its reporting of the Navy Federal tradeline. (Fievez Decl. at ¶ 14, Ex. 5 to Experian Mot. Summ. J.).

**D. Procedural History**

Plaintiff commenced this action on October 31, 2025. (*See generally* Compl., ECF No. 1). He asserts six "causes of action," each of which reference a litany of statutes, regulations, common law doctrines, caselaw, and constitutional provisions. (*See id.* 5:3–11:9). On January 23, 2026, Plaintiff filed a Motion for Partial Summary Judgment against Defendants. (*See generally* Pl's. First Mot. Part. Summ. J., ECF No. 42). On March 17, 2026, Plaintiff filed a second Motion for Partial Summary Judgment against Defendants. (*See generally* Pl's Sec. Mot. Part. Summ. J., ECF No. 65).

On August 26, 2026, Experian filed a Motion for Summary Judgment on all Plaintiff's claims. (*See generally* Experian Mot. Summ. J., ECF No. 95). Also on August 26, 2026, Navy Federal filed a Motion for Summary Judgment on all Plaintiff's claims. (*See generally* Navy Fed. Mot. Summ. J., ECF No. 99).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (quoting *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89) However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

///

## III. DISCUSSION

In their respective Motions for Summary Judgment, (ECF Nos. 95, 99), each Defendant asks the Court to dismiss all Plaintiff's claims. Plaintiff's First Motion for Partial Summary Judgment, (ECF No. 42), and Second Motion for Partial Summary Judgment, (ECF No. 65), assert similar claims to his Complaint, and it is unclear which of his original claims (if any) are omitted from the "partial" motions.

When a party is proceeding *pro se*, like Plaintiff, the court has a duty to construe his or her pleadings and other filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A *pro se* filing, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Since both Defendants seek full summary judgment, the Court construes Plaintiff's Partial Motions for Summary Judgment liberally to seek summary judgment on all his claims. *See, e.g.*, *Tomasello v. Comm'r of Soc. Sec.*, No. 1:25-cv-00334-BAM, 2025 WL 3685150, at *1 n.1 (E.D. Cal. Dec. 19, 2025).

The Court first addresses, as a matter of law, whether the Promissory Note is or was a valid contract, which underlies many of Plaintiff's claims against both Defendants. The Court then addresses Navy Federal's Motion for Summary Judgment (and the relevant portions of Plaintiff's Motions for Partial Summary Judgment) before turning to Experian's Motion for Summary Judgment (and the relevant portions of Plaintiff's Motions for Partial Summary Judgment). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court," as here, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

///

**A. Validity of Promissory Note**

Underlying many of Plaintiff's claims against both Defendants is his assertion that the Promissory Note was "void *ab initio*" and "fraudulent." (*See, e.g.*, Compl. 2:25–3:2); (Pl's. First Mot. Part. Summ. J. ¶ 14). He contends that two errors in the Promissory Note rendered it void from the beginning: that it contained the incorrect Vehicle Identification Number ("VIN"), and that it incorrectly stated that he had declined GAP coverage. (*Id.*). Neither Defendant disputes the existence of these errors. (Navy Fed. Mot. Summ. J. 10:2–4); (Experian Mot. Summ. J. 3:23–27). With no genuine dispute of material fact as to the existence of the errors in the Promissory Note, the Court considers whether the Note is void or fraudulent as a matter of law.

When a court is faced with a challenge to a contract's validity, it must determine whether the contract is invalid under the laws of the forum state before applying the choice-of-law provision contained in the contract. *Unarce v. Staff Builders, Inc.*, Nos. 93-16984, 93-17094, 1995 WL 418322, at *1 (9th Cir. July 13, 1995). The Court applies Nevada law to decide whether the Promissory Note is void or fraudulent.

First, as a matter of law, neither error invalidates the entire Promissory Note. It is clear that "all parties knew what was intended, no one was misled and [the loan] was in fact provided." *Jacobson v. Am. Fid. Fire Ins. Co.*, 541 P.2d 2, 3–4 (Nev. 1975). Plaintiff received a loan from Navy Federal to purchase the vehicle, and he made payments, which Navy Federal accepted, before the VIN was corrected. (*See* Delinq. Notice at 3–4, Ex. 5 to Navy Fed. Mot. Summ. J.). Neither party disputed which vehicle was the subject of the loan, and Navy Federal corrected the VIN on the Promissory Note after being notified of the error. (Buckman Decl. at 4, Ex. 10 to Navy Fed. Mot. Summ. J.); (Navy Fed.'s Letter of Feb. 28, 2024, at 2, Ex. 2 to Navy Fed. Mot. Summ. J.). Both parties performed as intended under the terms of the Promissory Note until Plaintiff stopped making payments on or before February 14, 2024.

(Delinq. Notice at 2, Ex. 5 to Navy Fed. Mot. Summ. J.). In addition, the incorrect notation of the GAP coverage on the Promissory Note did not preclude Plaintiff's actual enrollment in GAP. Rather, Plaintiff was enrolled by October 5, 2021, at the latest, less than two weeks after he signed the Promissory Note. (GAP Enrollment Letter at 2, Ex. 3 to Navy Fed. Mot. Summ. J.). The reverse is also true: the terms of the Promissory Note make clear that execution and performance do not depend on Plaintiff's enrollment in GAP coverage, an optional add-on. (*See generally* ePromissory Note, Ex. 1 to Navy Fed. Mot. Summ. J.).

Second, nothing in the record before the Court indicates that the Promissory Note was fraudulent. In Nevada, "fraud is never presumed; it must be clearly and satisfactorily proved." *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004) (internal quotations omitted). To establish that Navy Federal fraudulently induced him to sign an incorrect contract, Plaintiff "must prove by clear and convincing evidence" that (1) Navy Federal made a false representation; (2) Navy Federal knew either that the representation was false or that it didn't have sufficient information to make the representation; (3) Navy Federal intended to induce Plaintiff to sign the Promissory Note; (4) Plaintiff justifiably relied on the misrepresentation; and (5) Plaintiff suffered damages resulting from such reliance. *Id.* Even though Plaintiff shows that the VIN and the GAP coverage were denoted incorrectly on the Promissory Note, he fails to demonstrate any of the other elements of fraudulent contract formation.

Accordingly, the Court finds, as a matter of law, that the Promissory Note was not fraudulent or void *ab initio*. Having upheld the validity of the Promissory Note, the Court turns to the parties' Motions for Summary Judgment.

**B. Navy Federal's Motion for Summary Judgment**

Navy Federal's Motion for Summary Judgment contends that "the undisputed facts foreclose every cause of action asserted in the Complaint." (Navy Fed. Mot. Summ. J. 2:12).

Although Plaintiff asserts six enumerated causes of action, each count comprises many distinct theories of recovery, and many claims appear across several counts. (*See generally* Compl.). Irrespective of Plaintiff's own organizational scheme, to which Navy Federal attempts to adhere, the Court first addresses the choice-of-law provisions in the contracts between Navy Federal and Plaintiff, then considers Plaintiff's common-law contract and tort claims, and finally turns to his federal and state statutory claims.

**1. Choice of Law**

The Court must first determine the appropriate law that applies to Plaintiff's claims against Navy Federal. Plaintiff purchased the vehicle in Nevada and obtained the Navy Federal loan for it in Nevada. But the original Promissory Note contains a choice-of-law provision: "This agreement is entered into and shall be governed in all respects by federal law, and, when necessary, the laws of the State of Virginia." (ePromissory Note at 3, Ex. 1 to Navy Fed. Mot. Summ. J.). The GAP Agreement also contains a choice-of-law provision: "This agreement will be governed by the laws of Virginia." (GAP Agreement at 2, Ex. 4 to Navy Fed. Mot. Summ. J.).

In his Complaint and his Motions for Summary Judgment, Plaintiff generally focuses on Nevada law, with occasional references to Virginia statutes. (*See generally* Compl.); (Pl's First Mot. Summ. J.); (Pl's Sec. Mot. Summ. J.). He also presents various claims that at least touch in part on federal statutes. (*See generally* Compl.). Federal law, not state law, governs his federal claims. *See Carrasco v. Campagna*, No. C-03-4727-SBA-EMC, 2007 WL 81909, at *1 (N.D. Cal. Jan. 9, 2007). For the remaining state law claims, the Court turns to federal and state choice of law doctrines.

To resolve a choice of law dispute, a federal court must apply the forum state's choice-of-law rules to determine the controlling substantive law. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). Nevada follows the Restatement (Second) of Conflict of Laws

(A.L.I. 1971) in resolving choice-of-law questions involving contracts. *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014) (citing *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Invs.*, 603 P.2d 270, 273 (Nev. 1979)). If the parties "acted in good faith" and not to evade Nevada law, "Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract.'" *Id.* at 1064 (quoting *Ferdie Sievers*, 603 P.2d at 273). Nevertheless, the chosen state "'must have a substantial relation to the transaction, and the agreement must not be contrary to [Nevada] public policy.'" *Id.* (quoting *Ferdie Sievers*, 603 P.2d at 273).

Virginia has a "substantial relation" to the contracts between Plaintiff and Navy Federal because Navy Federal is domiciled in Virginia. *See ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (looking to California law, which like Nevada law, follows the Restatement (Second) of Conflict of Laws). Neither party claims that applying Virginia law to the Promissory Note or the GAP Agreement would contravene Nevada public policy. *See, e.g.*, *DeLeon v. CIT Small Bus. Lending Corp.*, No. 2:11-cv-01028-PMP-NJK, 2013 WL 1907786, at *6–7 (D. Nev. May 7, 2013) (noting that the parties had not identified anything in the contract that violated Nevada public policy); *Hellerstein v. Desert Lifestyles, LLC*, No. 15-cv-01804-RFB-CWH, 2015 WL 6962862, at *5 (D. Nev. Nov. 10, 2015) (accepting without discussion that a contract is not contrary to Nevada public policy). The Court therefore proceeds to consider the provisions' relevance to Plaintiff's claims.

The choice-of-law provisions in the Promissory Note and the GAP Agreement are unambiguous, so the Court applies Virginia law to Plaintiff's contract claims. *See, e.g.*, *Lash Grp., LLC v. Daya Meds., Inc.*, No. 2:24-cv-00843-ART-EJY, 2025 WL 2374339, at *3 (D. Nev. Aug. 13, 2025) (finding unambiguous a provision stating, "this agreement shall be construed in accordance with the laws of the state of Delaware").

To determine whether Plaintiff's tort claims fall within the scope of the choice-of-law clauses, the Court applies Nevada's three-step framework: (1) "whether the parties intended for tort claims to be governed by a choice-of-law clause in a related contract between them," (2) "whether the tort claims relate to the interpretation of the contract," and (3) "whether the tort claims involve the same operative facts as a parallel breach-of-contract claim." *Nail v. Lens.com*, No. 2:24-cv-01149-JAD-EJY, 2024 WL 4477012, at *2 (D. Nev. Oct. 11, 2024) (internal quotations omitted). States are split on whether tort claims are covered by choice-of-law provisions like the ones at issue here, in which the parties agreed for the contract to be "governed by" a specified body of law, and Nevada has not adopted a position. *Morgan v. Bash*, No. 2:19-cv-00546-JAD-BNW, 2021 WL 601871, at *2 (D. Nev. Feb. 16, 2021) (*comparing Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1154 (Cal. 1992), *with Knieriemen v. Bache Halsey Stuart Shields Inc.*, 74 A.D.2d 290, 293 (N.Y. App. Div. 1980)). Nevada courts often follow the lead of California courts, and the California Supreme Court held in a similar case involving tort claims arising from a contract that "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized." *Nedlloyd Lines*, 834 P.2d at 1154. However, another Court in this District declined to adopt that position in a consumer-protection suit, noting that the *Nedlloyd Lines* claims "unambiguously arose from the contract containing the choice-of-law clause," as required by steps two and three of Nevada's three-step framework. *Nail*, 2024 WL 4477012, at *3. Accordingly, the Court applies Virginia law to Plaintiff's tort claims that "unambiguously" arise from the Promissory Note or the GAP Agreement and Nevada law to any other tort claims.

///

///

**2. Breach of Contract**

Plaintiff alleges that Navy Federal breached the GAP Agreement by failing to pay for damage sustained to the Vehicle for two accidents in 2023, totaling $12,509.83. (Compl. 6:1–23, 14:1–7). Navy Federal, in turn, contends that Plaintiff cannot establish a breach because he never satisfied the conditions to receive GAP payments. (Navy Fed. Mot. Summ. J. 11:3–18).

Under Virginia law, a breach of contract claim requires "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (quoting *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)).

Plaintiff fails to present a genuine dispute of material fact as to whether Navy Federal had a legally enforceable obligation to pay for the damage to his vehicle. He claims that Navy Federal "failed to honor or facilitate GAP coverage." (Pl's. First Mot. Summ. J. ¶ 43). But Navy Federal was not automatically obligated to pay in the event of a theft or loss; instead, under the terms of the GAP Agreement, Plaintiff was required to notify Navy Federal within 60 days of receiving final settlement from an insurer and provide various forms of documentation. (GAP Agreement at 2, Ex. 4 to Navy Fed. Mot. Summ. J.). Navy Federal's duty to pay for damage to the vehicle is not triggered until Plaintiff submits a valid claim.

"[W]here an act is to be done by one party as a condition precedent to the right to claim performance on the part of another, the first party cannot compel such performance without alleging the achievement of such act or averring a sufficient excuse for its non-performance." *Flippo v. F & L Land Co.*, 400 S.E.2d 156, 160 (Va. 1991) (citing *Granite Bldg. Co. v. Saville's Adm'r,* 43 S.E. 351, 353 (Va. 1903)). Here, the record establishes that Plaintiff initiated a claim, but he failed to comply with the requirements of the GAP Agreement, despite Navy Federal's repeated attempts to obtain more information. (*See* GAP Claim File at 2, 4–6,

Ex. 6 to Navy Fed. Mot. Summ. J., ECF No. 99-7); (Decl. of Rob Buckman ¶ 10, Ex. 2 to Navy Mot. Summ. K., ECF No. 99-11). Plaintiff does not present any evidence to the contrary, nor does he establish that he was somehow excused from the notification requirements. (*See generally* Compl.); (Pl's. First Mot. Partial Summ. J.); (Pl's. Second Mot. Partial Summ. J.). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's breach of contract claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**3. Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff claims that Navy Federal breached the implied covenant of good faith and fair dealing by not paying for damages to Plaintiff's vehicle under the GAP Agreement. (Compl. 6:3–13). Navy Federal argues that its reliance on the GAP Agreement's express documentation and termination provisions "cannot constitute bad faith as a matter of law." (Navy Fed. Mot. Summ. J. 12:9–10).

Under Virginia law, the implied duty of good faith and fair dealing is part of every commercial contract, and when the alleged breach of duty relates to activity governed by express contractual terms, a plaintiff can only assert a cause of action for breach of contract. *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996); *Skillstorm, Inc. v. Elec. Data Sys.,* LLC, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (citing *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997)). "When, as here, parties to a contract create valid and binding rights, one party does not breach the . . . obligation of good faith by exercising such rights." *Charles E. Brauer Co.*, 466 S.E.2d at 386.

As explained above, (*see* Section (III)(B)(2)), Navy Federal was within its rights under the GAP Agreement to not pay for damage to Plaintiff's vehicle unless Plaintiff submitted a timely claim with the requisite documentation, and the record before the Court presents no genuine dispute of material fact regarding Plaintiff's failure to comply with the terms of the

Agreement. "The implied covenant of good faith and fair dealing does not compel a party to take affirmative actions [it] is not obligated to take under the terms of the contract," and Navy Federal is not compelled to pay Plaintiff unless he submits timely, legitimate claims under the terms of the Agreement. *Docena v. Navy Fed. Credit Union*, No. 3:15-cv-00184-LRH-WGC, 2016 WL 53826, at *3 (D. Nev. Jan. 4, 2016) (citing *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir. 2000)). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**4. Deceptive Practices**

Plaintiff argues that Navy Federal's "original and 'corrected' security agreements . . . falsely stated" that he had declined to enroll in the GAP program, and "[s]uppressing the purchased GAP constitutes a deceptive practice" under state law in both Virginia and Nevada. (Compl. 6:3–18).

Since Plaintiff's deceptive practices claim references the Promissory Note and invokes the contractual relationship between the parties, the Court looks to Virginia law. Plaintiff cites the Virginia Consumer Protection Act, Va. Code §§ 59.1-200(A)(14), which declares unlawful "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." (Compl. 6:18). But, as discussed above, (*see* Section (III)(A)(1)), Plaintiff fails to establish a genuine issue of material fact as to whether Navy Federal acted fraudulently by recording on the Promissory Note that Plaintiff had declined GAP coverage. Even if the "GAP Declined" notation were a misrepresentation, Plaintiff fails to show either that Navy Federal checked that box to "deliberate[ly] and intentionally" deceive him or that he relied on the misrepresentation in his decision to sign the Promissory Note. *See Key v. Lewis Aquatech Pool Supply, Inc.*, No. 195377, 2002 WL 920936, at *3 (Va. Cir. Mar.

14, 2002). Plaintiff avers that he believed he was enrolled in GAP, and indeed, he received a letter from Navy Federal confirming his enrollment less than two weeks after signing the Promissory Note. (GAP Enrollment Letter at 2, Ex. 3 to Navy Fed. Mot. Summ. J.). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's deceptive practices claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**5. Unjust Enrichment**

Plaintiff claims that Navy Federal was unjustly enriched by accepting Plaintiff's payment for the GAP program but not paying him for the damage to his vehicle. (Compl. 6:12-14). Navy Federal, in turn, argues that an unjust enrichment claim is not available when an express written contract, like the GAP Agreement, exists. (Navy Fed. Mot. Summ. J. 12:23–13:2).

Since Plaintiff's unjust enrichment claim arises unambiguously from the GAP Agreement, the Court applies Virginia law. Unjust enrichment is an "implied contract action based upon the principle that 'one person . . . may not enrich himself unjustly at the expense of another.'" *CGI Fed., Inc. v. FCI Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018) (quoting *Rinehart v. Pirkey*, 101 S.E. 353, 354 (Va. 1919)). "The existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *Id.* (citing *S. Biscuit Co. v. Lloyd*, 6 S.E.2d 601, 606 (Va. 1940)).

Plaintiff's claim for unjust enrichment arises from the terms of his contract: He asserts that Navy Federal was unjustly enriched by accepting his one-time GAP enrollment fee. Even if Navy Federal breached the GAP Agreement, Plaintiff could not, as a matter of law, establish that it was unjustly enriched by doing so. Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's unjust enrichment claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**6. Breach of Fiduciary Duty**

Plaintiff next claims that Navy Federal breached its fiduciary duty to him. (Compl. 6:18–19). Navy Federal counters that there is no fiduciary relationship between itself and Plaintiff. (Navy Fed. Mot. Summ. J. 16:17–26).

Since breach of fiduciary duty is a tort, and Plaintiff does not unambiguously establish that his claim arises from either contract with Navy Federal, the Court applies Nevada law. "A claim for breach of fiduciary duty under Nevada law requires a plaintiff to demonstrate a fiduciary duty exists, that duty was breached, and the breach proximately caused the damages." *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1024 (D. Nev. 2009) (quoting *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008)). "Ordinarily, an arms-length contractual relationship will not support a finding of a fiduciary or confidential relationship." *Butcher v. Advanced Min. Techs., Inc.*, No. 2:10-cv-01802-PMP-LRL, 2011 WL 810256, at *6 (D. Nev. Mar. 2, 2011) (internal citations omitted).

Plaintiff fails to establish a genuine issue of material fact as to any element of a breach of fiduciary duty. He merely asserts that "taking the GAP Premium and denying its benefit . . . breached fiduciary duties owed." (Compl. 6:13–19). His claims and the record before the Court "show the existence of an ordinary banking relationship," which, under Nevada law, is merely contractual in nature rather than a fiduciary relationship. *McDonald v. Navy Fed. Fin. Grp.*, No. 2:23-cv-01325-ART-EJY, 2023 WL 8084850, at *4 (D. Nev. Nov. 21, 2023), *report & recommendation adopted*, 2024 WL 3273797 (D. Nev. July 1, 2024). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's breach of fiduciary duty claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

///

///

**7. Constructive Trust**

Plaintiff claims that "[e]quity . . . imposes a constructive trust" over the payment he made to Navy Federal to enroll in the GAP payment, as he now alleges those funds were "wrongfully obtained." (Compl. 6:15–16). Navy Federal, in turn, argues that Plaintiff cannot present an independent claim for constructive trust because he has pled other claims seeking monetary damages. (Navy Fed. Mot. Summ. J. 13:20–27). Nevertheless, to afford Plaintiff's claims a liberal construction, the Court considers whether Plaintiff has established the elements of an independent claim for a constructive trust.

Under Virginia law, a constructive trust arises "in order to prevent what otherwise would be a fraud," where "property has been acquired by fraud or improper means" or, alternatively, where "it is contrary to the principles of equity that it should be retained." *Faulknier v. Shafer*, 563 S.E.2d 755, 758 (Va. 2002) (quoting *Leonard v. Counts*, 272 S.E.2d 190, 195 (Va. 1980)). "The evidence required to establish a constructive trust must be clear and convincing." *Crestar Bank v. Williams*, 462 S.E.2d 333, 335 (Va. 1995).[1]

As discussed above, (*see* Section (III)(A)), Plaintiff fails to establish a genuine dispute of material fact as to whether Navy Federal received his GAP payment through fraud or other misconduct. Nor does he explain how, as a matter of law, the principles of equity demand its return. Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's constructive trust claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**8. Conversion**

Plaintiff claims that Navy Federal "converted Plaintiff's equitable interests" by "securitizing and selling" the Promissory Note and failing to disclose his purchase of GAP

[1] Plaintiff also references Cal. Civ. Code §§ 2223–2224, which governs the availability of constructive trusts as a remedy. Because none of the claims in this action are governed by California law, the Court declines to discuss Cal. Civ. Code. §§ 2223–2224.

coverage. (Compl. 9:7–16). Navy Federal argues that Plaintiff fails to identify any personal property that was converted. (Navy Fed. Mot. Summ. J. 17:2–19).

Under Virginia law, to make a claim for conversion, a plaintiff must prove by a preponderance of the evidence that (1) it had "the ownership or right to possession of the property at the time of the conversion" and (2) the defendant "wrongful[ly] exercise[d] . . . dominion or control . . . over the plaintiff's property, thus depriving plaintiff of possession." *Kirdassi v. White*, 913 S.E.2d 311, 329 (Va. App. 2025) (quoting *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 838 F. Supp. 2d 436, 440 (E.D. Va. 2012)). For interference with "intangible property rights that arise from or are merged with . . . a promissory note," a plaintiff must demonstrate "a clear, definite, undisputed, and obvious property right . . . to immediate possession." *Mackey v. McDannald*, 842 S.E.2d 379, 387 (Va. 2020).

Plaintiff fails to establish as a matter of law that he had a "clear, definite, undisputed, and obvious" property right arising from the Promissory Note. As explained above, (*see* Section (III)(B)(2)), Plaintiff was not entitled to payment from Navy Federal under the GAP Agreement, so Navy Federal did not "convert" his original enrollment fee by not paying for the damage to his vehicle. Plaintiff also cannot show that he had a property right that was violated in the sale of the Promissory Note. Under the terms of the Promissory Note, Navy Federal was entitled to "take possession of the collateral . . . upon default" and sell it. (ePromissory Note at 3, Ex. 1 to Navy Fed. Mot. Summ. J.). Plaintiff attaches to his Complaint and to his First Motion for Summary Judgment a letter from Navy Federal informing him that he was delinquent on the loan, which Plaintiff does not refute at any point. (Delinq. Notice, Ex. F to Compl.); (Delinq. Notice, Ex. F to Pl's. First Mot. Part. Summ. J.). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's conversion claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

///

**9. Fair Credit Reporting Act**

Plaintiff asserts that Navy Federal's "continued reporting" of his default to Experian "after notice . . . that the loan was defective" constitutes "willful noncompliance" with the Fair Credit Reporting Act ("FCRA"). (Pl's. First Mot. Part. Summ. J. ¶¶ 23–24).[2]

15 U.S.C. § 1681s-2b imposes duties on "furnishers," like Navy Federal, that provide credit information to credit reporting agencies. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). To state a claim against a furnisher, a plaintiff must allege that (1) "the furnisher provided inaccurate information to the credit reporting agency," (2) the agency "notified the furnisher of a dispute," and 3) "the furnisher failed to conduct a reasonable investigation into the accuracy of the disputed information, in light of the information provided to it" by the agency. *Middleton v. Plus Four, Inc.*, No. 2:13-cv-01421-GMN-GWF, 2014 WL 910351, at *3 (D. Nev. Mar. 7, 2014).

However, Plaintiff never disputed the truth of the information Navy Federal provided to Experian, just the legal validity of the underlying Promissory Note. (*See* Section (II)(C)). Further, it is undisputed that Plaintiff stopped making payments on the loan in February 2024. (Delinq. Notice at 2, Ex. 5 to Navy Fed. Mot. Summ. J.). "A furnisher does not report incomplete or inaccurate information within the meaning of § 1681s-2b simply by failing to report a meritless dispute." *Gorman*, 584 F.3d at 1163 (internal quotations omitted). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's FCRA claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

*///*

---

[2] Plaintiff did not specifically accuse Navy Federal of violating the FCRA in his Complaint. He titled one of his causes of action against both Defendants as "Fair Credit Reporting Act"; therein, he alleged that Experian's publication of the "false" credit information violated the FCRA. (Compl. 6:25–7:8). While a plaintiff cannot add a new claim at summary judgment, *see Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006), the Court construes his original FCRA claim as applying to both Defendants.

**10. Defamation**

Plaintiff asserts that Navy Federal defamed him by "knowingly furnish[ing] false credit information to Experian by reporting Plaintiff's loan as delinquent and charged off, . . . despite the fact that Plaintiff purchased GAP coverage and was not liable for the claimed deficiencies." (Compl. 7:1–3). Navy Federal argues that the Federal Credit Reporting Act ("FCRA") preempts state defamation claims against entities that furnish information to credit reporting agencies. (Navy Fed. Mot. Summ. J. 15:11–20).

The FCRA "completely preempt[s]" state law claims "based on alleged injury arising purely from the reporting of credit information by a furnisher of credit." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 986 (N.D. Cal. 2014) (internal quotations omitted). Claims for defamation and intentional misrepresentation are consequently preempted. *Id.*; *see also Hasvold v. First USA Bank*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); *Buraye v. Equifax*, 625 F. Supp. 2d 894, 899 (C.D. Cal. 2008). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's defamation claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**11. Truth in Lending Act**

Plaintiff alleges that Navy Federal violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, by issuing the Promissory Note because it incorrectly denoted the VIN and his GAP enrollment status. (Compl. 5:3–12). Navy Federal, in turn, argues that Plaintiff failed to file his claim within TILA's one-year statute of limitations. (Navy Fed. Mot. Summ. J. 8:17–9:9).

TILA's civil liability provision, 15 U.S.C. § 1640, allows an individual to bring suit against a creditor who fails to comply with consumer credit disclosure requirements. However, it mandates that any TILA action be initiated "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Neither party disputes that Plaintiff signed the allegedly

noncompliant Promissory Note on September 23, 2021, (Compl. 2:12–13), (Navy Fed. Mot. Summ. J. 8:28–9:1) (ePromissory Note at 2, Ex. 1 to Navy Fed. Mot. Summ. J.), but he did not initiate this action until October 30, 2025, over four years later. (Compl. 16:5); (Navy Fed. Mot. Summ. J. 9:1). Only certain mortgage claims, which are not at issue in Plaintiff's Complaint, are exempt from the one-year statute of limitations. 15 U.S.C. § 1640(e). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's TILA claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**12. Federal Credit Union Act**

Plaintiff purports to assert claims against Navy Federal under the Federal Credit Union Act ("FCUA"). (*See, e.g.*, Compl. 6:19). The provision he cites—12 U.S.C. § 1757—merely outlines the general, corporate powers of federal credit unions. Moreover, the FCUA does not confer a private right of action. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's FCUA claims, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to these claims.

**13. Securities Exchange Act**

Plaintiff alleges that Navy Federal violated § 10(b) of the Securities Exchange Act of 1934. (Compl. 8:15–23). Navy Federal, in turn, argues that the Promissory Note is not a qualifying "security" within the meaning of the Act. (Navy Fed. Mot. Summ. J. 17:21–8:12).

Section 10(b) provides "an implied private cause of action" for misconduct or fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j. A transaction involves a "security" if (1) "the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate," (2) "it is an instrument in which there is common trading for speculation or investment," and (3) the "investing public" expects it to be a security.

*Reves v. Ernst & Young*, 494 U.S. 56, 66 (1990) (internal quotations omitted). "If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good . . . the note is less sensibly described as a 'security.'" *Id.*

Plaintiff fails to establish a genuine dispute of material fact as to whether the Promissory Note is anything more than a note exchanged to facilitate the purchase and sale of his vehicle. Even if Navy Federal fraudulently induced him to sign an inaccurate contract, he could not bring suit under § 10(b). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's Securities Exchange Act claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**14. Electronic Funds Transfer Act**

Plaintiff alleges that Navy Federal violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, by incorrectly noting on the Promissory Note that he declined GAP coverage, accepting payment from Plaintiff on the "void" Promissory Note, and selling the Note to a third party. (Compl. 10:9–17).

The EFTA authorizes a private right of action against a bank that fails to comply with the statutory requirements, "including the provision limiting a consumer's liability for unauthorized transfers." *McDonald*, 2023 WL 8084850, at *5 (citing 15 U.S.C. § 1693m(a)). As explained above, (*see* Section (III)(A)), Plaintiff cannot show that his payments to Navy Federal pursuant to the Promissory Note were "unauthorized," because he fails to establish either that the Note was invalid or that his performance depended on Navy Federal's payment for damage to his vehicle under the GAP Agreement. Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's EFTA claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

///

///

**15. 42 U.S.C. § 1983, United States Constitution, and Nevada Constitution**

Plaintiff purports to assert a claim under 42 U.S.C. § 1983 for Navy Federal's violations of the Due Process Clause and Contract Clause of the United States Constitution. The Court construes his federal constitutional claims as arising under either 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See, e.g.*, *Fleck v. Del-One Fed. Credit Union*, No. 3:25-cv-01048-SB, 2026 WL 867599, at *15 (D. Or. Mar. 30, 2026) (doing the same for a *pro se* plaintiff). Plaintiff also alleges violations of Nevada Constitution art. 1, §§ 1, 8, 10, 14, and 15.

A plaintiff can only bring a constitutional claim under 42 U.S.C. § 1983 for a violation "committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021). The same holds true for alleged violations of the Nevada Constitution. *See Mack v. Williams*, 522 P.3d 434, 448 (Nev. 2022) (emphasizing state actors' heightened obligations under a state constitution). Federal credit unions are not state or federal actors for purposes of constitutional liability. *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1132 (9th Cir. 1994). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's constitutional claims, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to these claims.

**16. Other Nevada Statutes and Uniform Commercial Code**

Finally, Plaintiff cites various provisions of the Nevada Revised Statutes ("NRS") that either do not govern this dispute or do not confer a private right of action: NRS 104.1302; NRS 104.9108; NRS 104.9203; NRS 97.195; NRS 118A.290; and NRS 113.140. (*See generally* Compl.). Plaintiff also cites various provisions of the Uniform Commercial Code ("U.C.C."), (*see generally id.*), which do not provide for a separate cause of action unless codified in a state statute. *See, e.g.*, *Barbano v. Wash. Mut./Chase*, No. CV-15-00297-PHX-JZB, 2015 WL 7179721, at *5 (D. Ariz. Nov. 16, 2015); *Brewer v. Wells Fargo Bank, N.A.*, No. 16-cv-02664-

HSG, 2017 WL 1315579, at *5 (N.D. Cal. Apr. 6, 2017). Accordingly, Navy Federal's Motion for Summary Judgment is GRANTED as to Plaintiff's claims under the aforementioned provisions of the NRS and U.C.C., and Plaintiff's Motions for Partial Summary Judgment are DENIED as to these claims.

For the reasons above, the Court GRANTS Navy Federal's Motion for Summary Judgment on all Plaintiff's claims and DENIES Plaintiff's Motion for Partial Summary Judgment with respect to all claims against Navy Federal.

**C. Experian's Motion for Summary Judgment**

The Court next turns to Experian's Motion for Summary Judgment. Experian contends that it is entitled to judgment as a matter of law "because there is no evidence of any underlying factual inaccuracy in Experian's reporting, and there is no evidence that Experian was unreasonable in its reinvestigation procedures." (Experian Mot. Summ. J. 3:11–13). As with Navy Federal's Motion for Summary Judgment, the Court first considers Plaintiff's common law contract and tort claims before turning to his federal statutory claims. Since Plaintiff's disputes with Experian do not arise from the terms of the Promissory Note or the GAP Agreement, the Court applies Nevada law to his state law claims.

**1. Breach of Fiduciary Duty**

Plaintiff claims that Experian, "acting as fiduciar[y] and trustee[] of [his] financial accounts and personal credit data, breached [its] fiduciary duties under equity and trust law." (Compl. 8:5–6). As explained above, (*see* Section (III)(B)(6)), "a claim for breach of fiduciary duty under Nevada law requires a plaintiff to demonstrate a fiduciary duty exists." *KB Home*, 632 F. Supp. 2d at 1024. Fiduciary duties arise in certain categories of relationships, such as insurer and insured or corporate officer and corporation. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 881 (9th Cir. 2007). Here, it is undisputed that Plaintiff's relationship with Experian does not fall within any of those categories. Experian is thus entitled to

judgment as a matter of law on Plaintiff's claim for breach of fiduciary duty. Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's claim for breach of fiduciary duty, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**2. Conversion**

Plaintiff asserts that Experian "commit[ted] conversion" by "divert[ing] trust property for [its] own benefit." (Compl. 8:24). Under Nevada law, a successful conversion claim requires a plaintiff to prove that the defendant wrongfully exercised dominion over the plaintiff's property. *Winchell v. Schiff*, 193 P.3d 946, 950 (Nev. 2008). It is undisputed that Experian never possessed Plaintiff's property. Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's conversion claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**3. Deceptive Practices**

Plaintiff claims that Experian's "knowing misreporting" of his debt "constitutes a deceptive trade practice." (Compl. 7:22). Experian contends that his claims are preempted by the FCRA, and in the alternative, since there is no dispute as to the factual accuracy of its reports, Plaintiff's deceptive practices claims are barred as a matter of law. (Experian Mot. Summ. J. 12:2–9).

Plaintiff's deceptive practices claim is not preempted by 15 U.S.C. § 1681t(b)(1)(F), which only applies to claims against entities "who furnish information to consumer reporting agencies." Consequently, the Court looks to Nevada state law. Plaintiff asserts his deceptive practices claim under the Nevada Deceptive Trade Practices Act ("NDTPA"), NRS 598.0915(15), which prohibits "[k]nowingly making any . . . false representation in a transaction." Nev. Rev. Stat. 598.0915(15). The "transaction" at issue in any NDTPA claim must relate to "goods and services." *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 972 (9th

Cir. 2017) (citing Nev. Rev. Stat. 598.0915–598.0925, 598.0934). "[D]isputes in credit reporting are not transactions involving goods and services and are therefore not covered under the NDTPA." *Bryson v. Equifax Info. Servs., LLC*, No. 2:25-cv-01568-GMN-NJK, 2026 WL 2740609, at *4 (D. Nev. Sept. 16, 2026) (citing *Steinmetz v. Am. Honda Fin.*, 447 F. Supp. 3d 994, 1014 (D. Nev. 2020)). As a result, Plaintiff's claim fails for two reasons: first, it is undisputed that Experian did not misrepresent his credit, as Plaintiff had undeniably defaulted on the loan (*see* Section (II)(C)), and second, Experian's credit reports are not goods or services, putting Plaintiff's claims beyond the reach of the NDTPA. Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's deceptive practices claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**4. Fair Credit Reporting Act**

Plaintiff claims that Experian violated various provisions of the FCRA—15 U.S.C. §§ 1681e(b), 1681i(a), and 1681s-2(b)—by publishing his "false tradelines" and lowering his credit score. (Compl. 7:6–7). He requests statutory damages under 15 U.S.C. §§ 1681n(o) and 1681(o). (*Id.* 7:27). The Court addresses these provisions in turn, giving each a "liberal construction" to reflect the FCRA's "consumer oriented objectives." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

**a. 15 U.S.C. §§ 1681e, 1681i**

First, 15 U.S.C. § 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [consumer] report relates." To establish a *prima facie* § 1681e(b) violation, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond*, 45 F.3d at 1333.

Further, 15 U.S.C. § 1681i prescribes the procedures a credit union must follow when a consumer disputes the accuracy of their report. "To succeed on a § 1681i claim, a plaintiff

must show that: (1) plaintiff's credit file contains inaccurate or incomplete information; (2) plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information; (3) plaintiff's dispute is not frivolous or irrelevant; (4) the [agency] failed to respond to plaintiff's dispute; (5) the failure to reinvestigate caused plaintiff to suffer damages; and (6) actual damages, such as damages caused by humiliation, mental distress, or injury to reputation or creditworthiness, resulted to plaintiff." *Florence v. Cenlar Fed. Sav. & Loan*, No. 2:16-cv-0587-GMN-NJK, 2018 WL 1145804, at *4 (D. Nev. Mar. 1, 2018), *aff'd sub nom. Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308 (9th Cir. 2019).

As explained above, (*see* Section (III)(C)(3)), Plaintiff fails to establish a genuine dispute of material fact as to the accuracy of Experian's reporting, because he had undeniably stopped making payments on the loan. (*See also* Section (II)(C)). That deficiency alone could foreclose his FCRA claims. Still, even if Plaintiff were correct, as a matter of law, that the Promissory Note was "void" or "invalid" or "fraudulent," he could not establish a *prima facie* § 1681e(b) claim. Although § 1681i mandates certain reinvestigation procedures, a reporting agency "is not required as part of its reinvestigation duties to provide a legal opinion on the merits" of a consumer's contract dispute. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Credit reports are considered accurate for purposes of the FCRA as long as the agency correctly reports information furnished by the creditor. *Florence*, 2018 WL 1145804, at *4 (quoting *Gauci v. Citi Mortg.*, No. 2:11-cv-01387-ODW(JEMx), 2012 WL 1535654, at *5 (C.D. Cal. Apr. 30, 2012)). Because Plaintiff challenged the Note's legality to Experian before resolving the matter directly with Navy Federal—through either direct communication or a lawsuit—Experian was under no obligation to adjudicate the unsettled legal issue. *Carvalho*, 629 F.3d at 892. Plaintiff cannot "mount [a] collateral attack[] on the legal validity of [his] debt[] in the guise of FCRA reinvestigation claims." *Id.* at 891. Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's §

1681e(b) and § 1681i claims, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to these claims.

**b. 15 U.S.C. § 1681n**

Second, 15 U.S.C. § 1681n makes a reporting agency liable to a consumer for willful, knowing, or reckless noncompliance. 15 U.S.C. §§ 1681n(a)–(b); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–60 (2007). A reporting agency only acts recklessly if its action violates "a reasonable reading of the statute's terms" and creates a risk of harm "substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. Since Experian's reporting did not violate a reasonable reading of the FCRA's terms, (*see* Section (III)(C)(4)(a)), Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's § 1681n claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**c. 15 U.S.C. § 1681s-2**

Finally, 15 U.S.C. § 1681s-2 establishes the "responsibilities of furnishers of information to consumer reporting agencies." Experian is a consumer reporting agency, not a furnisher. *See* 15 U.S.C. § 1681a(f) (defining "consumer reporting agency"). Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's § 1681s-2 claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**5. Defamation**

Plaintiff claims that Experian defamed him by publishing his "false tradelines" and lowering his credit score. (Compl. 7:6–13). Experian argues that Plaintiff's defamation claim is preempted by the FCRA, and in the alternative, that it is forestalled by the veracity of its reporting. (Experian Mot. Summ. J. 11:19–25).

The FCRA was intended to replace common-law defamation claims against credit reporting agencies. *Bryson*, 2026 WL 2740609, at *4. It provides that "no consumer may bring

any action or proceeding in the nature of defamation . . . with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Plaintiff's defamation claim cannot succeed for two reasons. First, as explained above, (*see* Section (III)(C)(3)), it is undisputed that he failed to timely pay his loan payments, meaning that Experian did not publish false information. Second, he does not establish a genuine issue of material fact as to whether Experian's conduct was malicious or willful. Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's defamation claim, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to this claim.

**6. Truth in Lending Act**

Plaintiff asserts that Experian violated the TILA by reducing his credit score based on the allegedly defective contract. (Compl. 8:4–13, 9:5–10). Contract validity aside, a consumer can only bring suit under the TILA against a "creditor," meaning a "person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1640(a) (establishing a private right of action against "any creditor who fails to comply"); 15 U.S.C. § 1602(g) (defining "creditor"). Experian is not a creditor, as it did not extend credit or issue any financial instrument to Plaintiff. Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's TILA claims, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to these claims.

**7. 42 U.S.C. § 1983, United States Constitution, and Nevada Constitution**

Plaintiff asserts that Experian violated various provisions of the United States Constitution and the Nevada Constitution. As explained above, (*see* Section (III)(B)(15)), a plaintiff can only bring constitutional claims against entities acting under color of state law. *Benavidez*, 993 F.3d at 1144; *Mack*, 522 P.3d at 448. Experian is not a federal or state actor.

*Clune v. Experian LLC*, No. 1:25-cv-00448-BLW, 2025 WL 3079323, at *2 (D. Idaho Nov. 4, 2025) (quoting *Polin v. Dun & Bradstreet, Inc.*, 768 F.2d 1204, 1204 (10th Cir. 1985)). Accordingly, Experian's Motion for Summary Judgment is GRANTED as to Plaintiff's federal and state constitutional claims, and Plaintiff's Motions for Partial Summary Judgment are DENIED as to these claims.

For the reasons explained above, the Court GRANTS Experian's Motion for Summary Judgment on all of Plaintiff's claims and DENIES Plaintiff's Motions for Partial Summary Judgment with respect to all claims against Experian. Because the Court previously denied Plaintiff's Motions for Partial Summary Judgment against Navy Federal, (*see* Section (III)(B)), the Court now DENIES Plaintiff's Motions for Partial Summary Judgment in full.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Navy Federal's Motion for Summary Judgment, (ECF No. 99), is **GRANTED.**

**IT IS FURTHER ORDERED** that Experian's Motion for Summary Judgment, (ECF No. 95), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Partial Summary Judgment, (ECF Nos. 42, 65), are **DENIED.**

**IT IS FURTHER ORDERED** that Navy Federal's Motion to Dismiss, (ECF No. 25), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order, (ECF No. 20), Motion for Preliminary Injunction, (ECF No. 21), Motion to Expedite, (ECF No. 85), and Motion for Leave to File, (ECF No. 113), are **DENIED as moot.**

The Clerk of Court is kindly directed to enter judgment in favor of Defendants and close the case.

**DATED** this 23 day of September, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT